IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03693-NRN

BRIAN TUCKER,

Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant.

---

**ORDER DENYING
ALLSTATE'S MOTION FOR SUMMARY JUDGMENT (Dkt. #36)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case is before me for all purposes pursuant to 28 U.S.C. § 636(c), upon the consent of the parties (Dkt. #14) and the Order Referring Case to Magistrate Judge entered by Chief Judge Philip A. Brimmer on February 24, 2020 (Dkt. #15). Now before me is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") Motion for Summary Judgment. Dkt. #36. Plaintiff Brian Tucker filed a response. Dkt. #43. Allstate filed a reply. Dkt. #51. On March 25, 2021, I held a Motion Hearing. *See* Dkt. #52. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** that the subject motion (Dkt. #36) is **DENIED**.

## BACKGROUND AND MATERIAL FACTS

This is an insurance coverage dispute. Based on the briefing and evidence submitted, the parties agree as follows, unless noted. Where a dispute exists, I construe the facts most favorably to Mr. Tucker, the nonmovant.

Mr. Tucker was in an automobile accident on April 30, 2015. He was insured under a policy issued by Allstate. Under the policy, Mr. Tucker was required to cooperate with Allstate in the investigation and authorize Allstate to obtain medical records. The policy also provides that an insured may not bring an action against Allstate unless there is full compliance with all policy terms.

Mr. Tucker's counsel submitted a letter of representation Allstate on June 10, 2015, advising that Mr. Tucker may pursue a UIM claim under the policy. On August 4, 2015, Allstate adjuster Charlene Djurdevic sent a letter to Mr. Tucker's agents asking that Mr. Tucker sign and return a medical-records authorization and identify all treating providers. Ms. Djurdevic also informed Mr. Tucker that Allstate would insist on strict compliance with the policy language requiring full compliance with policy provisions before a lawsuit can be filed. The authorization was never signed or returned to Allstate.

On August 13, 2018, Mr. Tucker's counsel wrote to inform Allstate that Mr. Tucker had commenced litigation against the tortfeasor. He requested permission to settle for the tortfeasor's policy limits of $100,000. The new adjuster, Raul Sanchez, requested a copy of the declarations page for the tortfeasor's liability policy as well as information on Mr. Tucker's injuries and treatment. Mr. Tucker provided the declarations page on January 31, 2019. On February 1, 2019, Allstate granted permission to settle and asked Mr. Tucker if he would be submitting a UIM claim. Mr. Tucker's counsel responded in the affirmative and indicated that a support package could be expected in 45–60 days.

Allstate contends that on February 19, 2019, Mr. Sanchez made a request to Mr. Tucker's counsel for a medical-records authorization and an identification of treating

2

providers "so I may obtain medical reports and other information needed to evaluate this claim." Mr. Tucker denies ever receiving this letter; therefore, he did not sign and return a medical-records authorization.

On June 14, 2019, another Allstate adjuster, Collin Draine, requested that Mr. Tucker submit any supporting documentation to him. The information provided to Mr. Draine detailed treatment up to November 14, 2018. After reviewing these records, Mr. Draine evaluated a range for Mr. Tucker's non-economic damages from $16,000 to $26,000. On August 22, 2019, Mr. Draine provided a letter explaining that Mr. Tucker had been fully compensated by the $100,000 paid by the tortfeasor. On August 30, 2019, Mr. Tucker submitted additional records. Mr. Draine performed another evaluation on September 11, 2019, which included $30,782.50 in medical expenses. In letters to Mr. Tucker's counsel, Mr. Draine observed that Mr. Tucker appeared to have suffered mainly soft tissue injuries and determined that Mr. Tucker was still fully compensated by the $100,000 he received from the tortfeasor. In conveying this explanation, Mr. Draine stated that his evaluation was based to "the demand documents your firm sent me."

Mr. Tucker filed this lawsuit on December 3, 2019. On March 12, 2020, he served his Initial Disclosures, which included a February 14, 2018 letter from Dr. Drew M. Trainor of Denver Back Pain Specialists suggesting potential ongoing and future medical treatment. According to Allstate, this document was not provided to Allstate until after Mr. Tucker commenced litigation. Mr. Tucker says the letter was in his two demand packages to Allstate.

On April 10, 2020, Mr. Tucker served his First Supplemental Disclosures. These disclosures included a November 8, 2018 IME report from Dr. Rafer Leach. Allstate

3

claims that Mr. Tucker did not provide Allstate with Dr. Leach's report prior to litigation. Again, Mr. Tucker claims that they were included in his prior demand packages.

Mr. Tucker's deposition was taken August 28, 2020. At the time of the deposition, Mr. Tucker's most recent disclosures were his Second Supplemental Disclosures, served May 5, 2020. Mr. Tucker's Second Supplemental Disclosures state that Mr. Tucker's most recent medical treatment was July 11, 2018 at Denver Back Pain Specialists. Allstate served written discovery requests on April 17, 2020. Allstate's written discovery asked Mr. Tucker to identify if, prior to filing the lawsuit, he had failed to provide "any information to Allstate that was relevant to your claim." Mr. Tucker represented under oath that there was no relevant, pre-suit information he had that he had not provided to Allstate. Further, in response to a request for production seeking all medical records generated after the accident, Mr. Tucker referred to his Initial Disclosures, indicating that he had already disclosed all medical records. Mr. Tucker did not produce any medical records between the April 10, 2020 First Supplemental Disclosures and the date of his deposition. During the deposition, Mr. Tucker informed Allstate for the first time that the tortfeasor had requested an IME as part of that lawsuit. Mr. Tucker acknowledged at the deposition that the IME was relevant to assessing his injuries and damages. Mr. Tucker also testified that he had been receiving ongoing medical treatment, including injections every 2 months. This information was not provided to Allstate before the deposition.

On September 2, 2020, Mr. Tucker served his Third Supplemental Disclosures, which contained medical records and bills for treatment in 2019 and 2020, but did not include Dr. Bernton's IME report from Mr. Tucker's lawsuit against the tortfeasor. Mr.

4

Tucker did provide the report on February 15, 2021, even though he asserts that he had no duty to do so.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment serves the purpose of testing where a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine

factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). *See also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

## ANALYSIS

In his Complaint, Mr. Tucker asserts claims against Allstate for: (1) UIM benefits under the policy; (2) breach of contract; (3) statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 & 1116; and (4) common law bad faith. Allstate now contends that it is entitled to judgment on all of Mr. Tucker's claims. According to Allstate, Mr. Tucker's breach of contract claim fails because he cannot show that he complied with the terms of the policy. Specifically, Allstate asserts that Mr. Tucker forfeited his right to coverage under the policy by failing to cooperate in the investigation and failing to provide medical

6

records documents and authorizations that would have allowed Allstate to fairly evaluate his claim. Because Mr. Tucker cannot maintain a viable breach of contract claim, Allstate argues that his bad faith claims fail as a matter of law. I disagree.

I noted as follows in a recent case where Allstate similarly invoked the "failure to cooperate" defense:

> In Colorado, a cooperation requirement in an insurance policy is "valid and enforceable." *Farmers Auto. Inter-Insurance Exchange v. Konugres*, 119 Colo. 268, 202 P.2d 959, 962 (1949). Where such a requirement exists, an insured who "fails to cooperate with the insurer in some material and substantial respect" may forfeit the right to recover. [*State Farm Mut. Auto. Ins. Co. v.*] *Secrist*, 33 P.3d [1272, 1275 (Colo. App. 2001)].
>
> Importantly, "[w]hether there has been 'cooperation' on the part of an assured with the company . . . is usually a question of fact." *Konugres*, 202 P.2d at 963. *See also Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) ("Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court."). Non-cooperation constitutes breach only if "material and substantial disadvantage" to the insurer is proved. *Id.* "[A]ny formal, inconsequential or collusive lack of cooperation will be immaterial." *Konugres*, 202 P.2d at 962. In addition, what might appear initially to be a breach of the cooperation clause "may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." *Id.*

*Cribari v. Allstate Fire & Cas. Ins. Co.*, 375 F. Supp. 3d 1189, 1198 (D. Colo. 2019). The insurer bears the burden to prove failure to cooperate. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015).

In determining whether an insurer has suffered a material and substantial disadvantage, a court looks to:

> whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist. Specifically, it has been held that the insurer can deny coverage, following an insured's refusal to provide documents reasonably requested by the insurer, on the basis that

> the insurer has been prejudiced because the insured's refusal prejudices the insurer by putting the insurer in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.

*Walker v. State Farm Fire & Cas. Co.*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341, at *4 (D. Colo. Feb. 23, 2017) *report and recommendation adopted*, No. 16-CV-00118-PAB-STV, 2017 WL 1386346 (D. Colo. Mar. 17, 2017) (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th ed. 2016)).

Allstate points to several instances where it claims Mr. Tucker breached the policy's requirements that he authorize Allstate "to obtain medical reports and other records pertinent to the claim," and "cooperate with [Allstate] in the investigation . . . of any claim." I will address each in turn.

First, Allstate directs me to the fact that Mr. Tucker did not provide it with any medical documents for more than four years following the accident. Allstate claims that this "robb[ed it] of any opportunity to perform an ongoing assessment of the claim or even know who was treating Plaintiff for his accident-related injuries." The force of this argument is diminished, however, when considering the realities of medical treatment and third-party insurance disputes. As Mr. Tucker notes, medical records are only developed over time, sometimes a period of years. Moreover, to establish that he was entitled to UIM benefits from Allstate, Mr. Tucker first had to deal with the tortfeasor and his insurance carrier. This takes time and, in this case, necessitated a lawsuit. Mr. Tucker claims that it was only in early 2018, after Dr. Trainor indicated that his "pain complaints will be permanent," that Mr. Tucker believed that the tortfeasor's liability insurance would not adequately compensate him for his injuries. And it is not the case that Allstate was wholly in the dark as to what Mr. Tucker was doing during this period.

Allstate's claim file indicates that in the summer of 2018, Mr. Tucker was "still getting injections every couple months for the next 5 years" and that his medical bills were "climbing." Indeed, in an August 20, 2018 letter, an Allstate adjuster informed Mr. Tucker that it was "too early" to confirm UIM exposure. It was only after Mr. Tucker, with Allstate's permission, settled with the tortfeasor in January 2019 and made a demand to Allstate that Allstate was in a position to evaluate his UIM claim. In short, Allstate cannot show that it was prejudiced or disadvantaged by not having medical records or bills between the period between Mr. Tucker's accident and his UIM demand.

     Next, Allstate claims that on two occasions, Mr. Tucker failed to sign and return a medical-records authorization, which prevented Allstate from independently obtaining his medical records. It is undisputed that Mr. Tucker did not respond to an Allstate agent's request in August 2015 that he provide a medical-records authorization. Mr. Tucker provides no justification for this failure. At the same time, though, Allstate has not demonstrated that this was an act of bad faith, as opposed to an oversight, on Mr. Tucker's part. At his deposition, Mr. Tucker stated he would have signed an authorization had one been presented to him. Furthermore, there is no record that Allstate ever told Mr. Tucker that by not providing the authorization, it would be unable to process his claim or that he would risk forfeiting all coverage under the policy. Significantly, Allstate has not identified a material and substantial disadvantage that it suffered by not having the authorization. Allstate does not claim that there are medical records it would or could have obtained pursuant to the medical-records authorization that were not ultimately disclosed by Mr. Tucker. And, as discussed above, the mere fact that Allstate could have accessed Mr. Tucker's medical records earlier in time is not

sufficient, as a matter of law, to constitute a breach of the cooperation requirement. It is also appropriate to note, as Mr. Tucker does, that Mr. Draine, the adjuster who ultimately denied UIM coverage in 2019, did not request an authorization or indicate that one was necessary to complete his evaluation.

As to the second authorization request, Mr. Tucker denies ever receiving it. This is plainly a factual dispute that cannot be resolved on a Rule 56 motion but must be decided by the trier of fact.

Allstate next maintains that Mr. Tucker breached the policy by not disclosing up-to-date medical records, Dr. Trainor's recommendations letter that indicated that Mr. Tucker was permanently injured, and Dr. Leach and Dr. Bernton's respective IME reports. Regarding the medical records, Mr. Draine apparently believed that Mr. Tucker had stopped treatment in November 2018. However, Mr. Tucker's correspondence with Mr. Draine reveals that he was continuing to receive treatment in the form of injections and was in the process of procuring these records. In his response, Mr. Draine does not refer to Mr. Tucker's declaration that he is continuing treatment and waiting on records, nor did he ever request to interview Mr. Tucker to get this information firsthand. The evidence indicates that through counsel, Mr. Tucker expressed a willingness to work with Mr. Draine and provide him what he needed. Mr. Draine, for his part, did not send a reservation of rights and never threatened to deny coverage under the policy's cooperation clause. Under these circumstances, summary judgment is not appropriate on a failure to cooperate theory.

From the record before me, there is also a factual dispute as to whether Mr. Draine and Allstate had access to the letter/reports of Dr. Trainor and Dr. Leach prior to this lawsuit being initiated. Mr. Tucker's demand letter to Mr. Draine states as follows:

> We are including with this letter the original Demand Package that was sent to State Farm along with the future treatment needs envisioned by Dr. Drew Trainor at Denver Back Pain Specialists. As you can glean from the records, Dr. Trainor has opined that Mr. Tucker's neck injury is permanent. An independent medical exam performed by Dr. Rafer Leach . . . is also attached.

In a follow up letter, Mr. Tucker's counsel again referenced the medical opinions of Dr. Trainor and Dr. Leach and offered to provide their reports if Mr. Draine did not have them. Mr. Draine neither requested the reports nor mentioned them in his correspondence. Accordingly, while a question of fact exists as to whether Mr. Tucker actually provided these reports to Mr. Draine, there is no indication that Mr. Tucker was hiding them or otherwise acting in bad faith.

Finally, Dr. Bernton's IME report was generated at the behest of the tortfeasor's insurance carrier in the course of defending Mr. Tucker's lawsuit against its insured. The relevancy of such a document to a claim for UIM coverage is doubtful. It is certainly not a treatment record. Moreover, Allstate was admittedly aware of the litigation between Mr. Tucker and tortfeasor but apparently did not request records relating to that action. In any event, there is nothing in the policy that would put Mr. Tucker on notice that he had a contractual duty to disclose an adverse opinion of this sort to his own insurance carrier, which has an independent obligation to fairly investigate and evaluate his claim, and Allstate cites no statute or caselaw that required him to do so.

My conclusion that summary judgment in favor of Allstate is inappropriate is bolstered when I compare the facts of this case to those where an insured's failure to

11

cooperate was deemed so substantial and material as to warrant summary judgment.

As I explained in *Cribari*,

> For example, in *Walker v. State Farm Fire & Casualty Co.*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341 (D. Colo. Feb. 23, 2017), Magistrate Judge Varholak recommended summary judgment be granted in favor of an insurer on a breach of insurance contract claim based on failure to cooperate where the plaintiff/insured was extraordinarily uncooperative in the insurer's investigation of an alleged theft of $ 60,000 in luxury goods. The *Walker* plaintiff had refused to answer questions during two examinations under oath. His answers to simple and direct questions were unhelpful and evasive. He refused to verify bank records received from his bank; he refused to verify photographs that he had submitted of the allegedly stolen items; he refused to verify or substantiate proof of his income or even his ownership of the alleged stolen goods. He refused to provide a tax release that would have allowed the insurer to verify income. And despite making a claim for $ 60,000 in lost luxury goods, he could not produce a receipt for a majority of the items, and provided no documentary proof to establish his ability to purchase $ 60,000 worth of luxury goods.
>
> Another example is *Harris v. Allstate Insurance Company*, No. 09-cv-01953-LTB-MJW, 2010 WL 2543560 (D. Colo. June 22, 2010), where Judge Babcock granted summary judgment in favor of an insurer because of the plaintiff's failure to cooperate. The *Harris* insurance policy had specific policy language specifying that the "injured person may be required to take medical examinations by physicians we choose, as often as we reasonably require. We must be given authorization to obtain medical reports and other medical records pertinent to the claim." *Id.* at *3. Yet, in the face of this unequivocal policy language, the Harris plaintiff refused to submit to an IME by a doctor chosen by Allstate, and failed to execute the requested medical release authorizations. Judge Babcock found these failures to abide by the specific contractual obligations to constitute a refusal to cooperate and failure to satisfy the conditions precedent to coverage. "No reasonable trier of fact could conclude otherwise." *Id.* at *4.
>
> Then there is the *Windhorst* case, where the insurance policy required the insured to "cooperate" and "assist" the insurer in "securing and giving evidence" and also required the insured to provide written authorizations to allow the insurer to obtain "medical bills," "medical records," "wage, salary, and employment information; and any other information [the insurer] deem[s] necessary to substantiate the claim." . . . Although the insured refused to sign blanket medical releases, the insurer was willing to accept relevant medical documents along with a privilege log of withheld documents. But no log of privileged medical records was

> ever provided prior to suit being filed. And when the insured appeared for an examination under oath, it was terminated after twenty minutes because of interference by the insured's counsel. The insurer gave a "final" warning, via a letter, giving the insured another opportunity to cooperate by providing relevant medical records or a privilege log. The insurer noted that the insured had failed to provide relevant medical records from at least ten different health care providers. But no further medical records or any privilege log were provided until after suit was filed. There was an unrebutted affidavit from the insurer explaining that the claim could not be adjusted without the requested records.
>
> *Doerr v. Allstate Ins. Co.*, 121 F. App'x 638 (6th Cir. 2005), was a case involving fire loss after suspected arson, where the insured refused to supply information of his exact whereabouts on the date of the fire, did not provide any of the requested financial records or documents, refused to provide evidence of his financial condition, assets and expenses, utility records for the insured property, or the extent of phone calls between himself and the current tenant. The insurer specifically warned the insured that his non-compliance with the insurance policy conditions could result in a forfeiture of his rights under the policy. In light of all those facts, the court held that the insured's failure to provide the requested records breached his duty to cooperate.

375 F. Supp. 3d at 1200–01.

By contrast, in this case there is evidence that Mr. Tucker demonstrated a willingness to cooperate with Allstate to provide it with information necessary to evaluate his claim. A reasonable juror could conclude that Mr. Tucker's failure to provide the medical-records authorization was merely an excusable mistake, and that other instances of purported non-cooperation could be chalked up to miscommunication between the parties or even a lack of diligence on Allstate's part. Furthermore, as I noted in *Cribari*, "in a number of the cases cited above, the failure to cooperate supported a conclusion by the insurer that the claim was fraudulent, and the failure to cooperate was an effort by the insured to prevent the insurer from discovering the fraud." *Id.* at 1201. There is no evidence that Mr. Tucker's failure to provide information was part of a plot to conceal a fraudulent claim.

13

The two more recent decisions from this District cited by Allstate are also distinguishable. Judge Daniel D. Domenico summarized the facts of *Hall v. Allstate Fire & Cas. Ins. Co.*, No. 19-cv-02604-DDD-NYW, 2021 WL 119344, at *2 (D. Colo. Jan. 12, 2021), as follows:

> After Mr. Hall sent his initial medical bills to Allstate in April 2019, Allstate attempted to follow up with him on numerous occasions to discern whether he had incurred additional medical expenses. Mr. Hall responded to none of those follow-up communications and did not supplement his medical records or bills. He instead filed this suit alleging Allstate's breach. But under the cooperation clause, there can be no breach unless Mr. Hall cooperated in Allstate's investigation of his claim.

2021 WL 119344, at *2. Judge Domenico found that summary judgment was proper on the plaintiff's claims because he filed suit without giving Allstate the opportunity to investigate his claim. *Id.* at *3. Here, conversely, Mr. Tucker's counsel did respond to Allstate's letters and offered to supplement his records and bills and provide whatever other information Allstate deemed relevant. He filed the lawsuit only after those communications faltered.

Similarly, in *Haptonstall v. Am. Fam. Mut. Ins. Co.*, No. 19-CV-00037-CMA-KLM, 2021 WL 392601 (D. Colo. Feb. 4, 2021), Judge Christine M. Arguello found that the defendant insurance carrier carried its burden of proving noncooperation. There, in addition to failing to provide any medical-record authorizations, the plaintiff refused to produce authorizations for academic records, failed on numerous occasions to provide unredacted and updated medical records, and refused to undergo neuropsychological testing as requested by the insurer. *Id.* at *6–8. This case, like the others described above, involved a much greater degree of culpability on the part of the insured and a correspondingly greater prejudice suffered by the insurance carrier.

Allstate insists that "worse conduct does not absolve Plaintiff of his breaches." But I must take into account the entire claim history when deciding whether Allstate was substantially and materially disadvantaged, and Allstate does not point to a case where an insured's one-time failure to sign a medical-records authorization, years before the UIM demand was even sent to the insurer, was, standing alone, grounds for summary judgment. And, as I stated above, Allstate has not demonstrated that Mr. Tucker had an affirmative duty to produce Dr. Bernton's IME report. Those are the only undisputed facts before me. A reasonable juror may conclude, after hearing each side's version of the *disputed* facts, that Mr. Tucker failed to cooperate, that Allstate's behaved unreasonably, or neither, but I cannot decide that on the undisputed evidence presented.

Because I find that disputed issues of material fact preclude granting summary judgment, I decline at this time to address the novel question of whether Colo. Rev. Stat. § 10-3-1118 (effective on September 14, 2020) applies to bar Allstate's failure-to-cooperate defense in this case. It may be that before this case goes to trial, there will be additional guidance from the Colorado courts as to how that statute, which imposes certain preconditions insurers (such as giving fair notice and an opportunity to cure) before an insurer can invoke a defense of "failure-to-cooperate," should be applied to cases filed before the passage of the statute. I note that the act adding this section to Colorado's statutes provided in Section 2, "This act applies to litigation that occurs on or after the applicable effective date [September 14, 2020] of this act." This case was filed before the passage of the new law. But the litigation is still "occurring" after the passage

of the statute. In light of my reasoning outlined above, I need not decide this question today.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. #36) is DENIED. This case will go to trial.

Dated this 26th day of March, 2021.

N. Reid Neureiter
United States Magistrate Judge