IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03693-NRN

BRIAN TUCKER,

Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant.

---

**ORDER ON
DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT
MICHAEL J. ROSENBERG (Dkt. #35)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before me on Defendant Allstate Property and Casualty Insurance Company's ("Allstate") Motion to Exclude Plaintiff's Expert (the "Motion to Exclude") (Dkt. #35), filed February 16, 2021. I heard argument on Allstate's Motion to Exclude on March 25, 2021. At the end of the hearing, I offered counsel for Allstate the opportunity to depose Mr. Rosenberg and submit supplemental briefing in connection with the Motion to Exclude. Allstate accepted my offer to depose Mr. Rosenberg and submit supplemental briefing. *See* Dkt. #56 and #56-2 (Brief in Support of Motion to Exclude, including portions of Rosenberg Transcript, filed May 17, 2021). On May 27, 2021, Plaintiff Brian Tucker filed a supplemental response brief in opposition to the Motion to Exclude. *See* Dkt. #57.

To establish that an insurance company acted in bad faith, "the insured must show that a reasonable insurer under the circumstances would have paid or otherwise settled the third-party claim." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004). The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards." *Id*. Thus, the jury in this case will be tasked with deciding whether Allstate's actions were reasonable based on standards that govern the insurance industry. Mr. Rosenberg is being put forth as an expert in the insurance industry to testify on the reasonableness of Allstate's conduct based on insurance industry standards.

Having reviewed all the relevant material, including Mr. Rosenberg's expert opinion and cited portions of his deposition, Allstate's Motion to Exclude will be **DENIED**.

**Standard for Admissibility (and Exclusion) of an Expert Opinion**

A witness who possesses sufficient knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the methodology to the facts of the case. Fed. R. Evid. 702. A court has broad discretion "to determine reliability in light of the particular facts and circumstances of the particular case." *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United*

States v. Crabbe, 556 F. Supp. 2d 1217, 1220–21 (D. Colo. 2008) (citations omitted); *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592 n.10 (1993). Although *Daubert* dealt with scientific testimony, a court's gatekeeping function to ensure that expert testimony is both relevant and reliable extends to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In the Tenth Circuit, the Rule 702 analysis has two steps: I first determine (1) whether the expert is qualified to render the proffered opinion; and then (2) whether the opinion itself is reliable. *Crabbe*, 556 F. Supp. 2d at 1221. A court acts within its discretion for excluding experts who "pick and choose" from the factual landscape, *Lust By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996); who offers an opinion "that fails to explain information that otherwise would tend to cast doubt" on the conclusion, *In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005); or who make assertions which are plainly contradictory to the record. *Kumho*, 526 U.S. at 154 (upholding trial court's findings of faulty factual predicate for opinion that "the tire before [the expert] had not been abused despite some evidence of the presence of the very signs for which he looked (and two punctures)").

I have broad latitude in deciding both how to measure reliability and whether the proposed testimony is in fact reliable. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). If an expert's testimony is reliable, the trial court must then evaluate whether the testimony will assist the trier of fact. *U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). Three nonexclusive factors guide this analysis: (1) whether the testimony is relevant; (2) whether it is within the jury's common knowledge and experience; and (3) whether it will usurp the jury's role of evaluating witness

credibility. *Id.* "In essence, the question is whether the reasoning or methodology properly can be applied to the facts in issue." *Id.* (quotation omitted). "[A]s long as a logical basis exists for an expert's opinion . . . the weaknesses in the underpinnings of the opinion[] go to weight and not the admissibility of the testimony." *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (overruled on other grounds); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (plaintiff need not prove that expert is indisputably correct to get past a Rule 702 challenge). Ultimately, excluding expert testimony is the exception rather than the rule. Fed. R. Evid. 702 advisory committee's notes.

On the issue of an expert opining on the law, the Tenth Circuit has held that "a witness may refer to the law in expressing an opinion" or "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). However, witness testimony that aims to "direct the jury's understanding of the legal standards upon which [its] verdict must be based" improperly usurps the role of the trial judge and is therefore inadmissible. *Id.* Thus, opinions that merely rephrase the legal standard under Colo. Rev. Stat. § 10-3-1115 and express the expert's beliefs as to the legal rights and obligations of the parties are not admissible because they do nothing but usurp the role of the judge and are not helpful to the jury. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F.Supp.3d 1170, 1184 (D. Colo. 2018). Although an expert may refer to the law in stating opinions, he may not "define the legal parameters within which the jury must exercise its fact-finding function." *Id.* (quoting *Specht*, 853 F.3d at 809). This is a subtle distinction, but per Chief Judge Brimmer's decision in *TBL Collectibles*, it appears that

4

while an expert may not merely rephrase the determinative legal standard in a case, an expert may illustrate what constitutes "reasonable" conduct in the insurance industry by reference to statutory and regulatory provisions that are not conclusive of liability. *Id.* (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)).

**Application to the Instant Case**

Mr. Rosenberg's expert report is 38 single-spaced pages long. It is divided into several separate sections. From pages 2 through 25 of his report, Mr. Rosenberg recites the documents and facts he reviewed and relies upon for his opinion. This is a roughly chronological recitation of entries from the Allstate claim file, including excerpts of certain entries and copies of correspondence between the various Allstate adjusters involved in the matter and Plaintiff's counsel.

Pages 25 through 31 of Mr. Rosenberg's report recite his understanding of the general "governing standards" for an insurance company's duty of good faith and fair dealing, including a discussion of standards developed through case law and statute, and industry-wide standards as reflected in Allstate's Casualty Claim Handling Manual and as acknowledged by Allstate in deposition.

Pages 31 through 34 provide a general overview of Mr. Rosenberg's understanding of general principles relating to uninsured and underinsured motorist insurance coverage, including the duty of the insurer to conduct a good-faith investigation of the accident that caused the insured's injury. Pages 34 through 36 cover the principles of estoppel, waiver, and the duty to cooperate.

And finally, pages 36 through 38 contain the summary of Mr. Rosenberg's opinions. His general overarching opinion is that industry standards required Allstate to have conducted a "reasonable investigation into the salient facts," which should have included, at minimum, a thoughtful and unbiased review of the medical records and opinions of treating physicians and specially retained experts. Dkt. #35-1 at 36. Based on his review of the case, Mr. Rosenberg opines that that did not happen. Mr. Rosenberg identifies 23 separate issues with Allstate's claims handling in this case, which lead to his ultimate conclusion that Allstate's investigation and evaluation of Mr. Tucker's claim for UIM benefits "falls far below industry standards and norms applicable to first-party insurance claims." *Id.* These issues range from "(2) failing to speak or request to speak to Mr. Tucker's treating care providers and specially retained experts . . . ;" "(5) engaging in what amounts to the unauthorized practice of medicine, reducing Mr. Tucker's medical bills without having consulted with a physician, obtained an IME, or a medical records review;" "(14) failing to consult with any medical professionals about Mr. Tucker's injuries prior to denying benefits and prior to suit having been filed;" "(17) failing to respond substantively to communications from Mr. Tucker's counsel respecting the merits of the claim;" "(18) relying on a cervical MRI to discount a nerve injury;" to "(22) placing the onus on Mr. Tucker to essentially adjust his own claim by failing to proactively seek out the information required for a fair evaluation." *Id.* at 36–37. Mr. Rosenberg's final complaint, which is essentially his overarching opinion, is that "in general," Allstate conducted "what amounted to an incomplete, inadequate and one-sided/biased investigation in which the insurer looked for and gave greater weight to

evidence it claimed supported nonpayment than it gave to evidence supporting payment." *Id.* at 37.

Mr. Rosenberg also opines that Allstate violated several statutory rules, including provisions of the Unfair Claims Settlement Practices Act, Colo. Rev. Stat. § 10-3-1104(1)(h) ("UCSPA"), by, among other things, compelling Mr. Tucker to "institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds" and "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." *Id.*

**There is no challenge to Mr. Rosenberg's Qualifications.**

There is no challenge to Mr. Rosenberg's qualifications to speak as an expert on issues of insurance bad faith. Mr. Rosenberg is a 1996 graduate of the University of Denver's law school. He was a law clerk for a judge on the Colorado Court of Appeals. He had prosecuted numerous bad faith cases against insurers for the past 25 years. He has also defended and consulted with various insurers who have been accused of bad faith during the same period. He has litigated both first-party and third-party bad faith actions through trial and appeal. He has been endorsed as an insurance bad faith expert a number of times and has testified at trial in both state and federal court in cases where he has been disclosed as an expert. His qualifications to express opinions in the areas of insurance bad faith have never been the subject of any successful challenge. *See* Dkt. #35-1 at 1–2.

**Defendant's Arguments to Exclude Mr. Rosenberg's Opinions**

Allstate's primary argument is that Mr. Rosenberg's opinions are unreliable because he relies on facts that do not exist, or cherry-picks certain facts to the exclusion of others, and fails to apply the required intellectual rigor. *See* Dkt. #35 at 3–4. Allstate cites *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014), and *E.E.O.C. v. Freeman*, 778 F.3d 463, 467 (4th Cir. 2015), in support of the proposition that expert opinions may be excluded where excessive numbers of factual mistakes and omissions in the analysis render the opinion so unreliable that it cannot be allowed to go before the jury. Allstate argues that the requirement of "sufficient intellectual rigor" necessarily requires "getting the facts of the controversy correct." *Id.* at 7.

Allstate also argues that Mr. Rosenberg's opinions should be excluded because they are untethered to any specific identifiable industry standard. *Id.* at 7–9. As an example, Allstate points to Mr. Rosenberg's criticism of Allstate's use of Colossus—a software program used by Allstate's adjusters—and the absence of any discussion regarding industry standards applicable to software programs. Allstate says there is no explanation or factual basis for Mr. Rosenberg's conclusory opinion that Allstate's use of computer software programs in the adjustment process is an act of bad faith. *Id.* at 7.

In Allstate's view, Mr. Rosenberg "simply plans on telling the jury his view of the evidence and why the jury should agree with him." *Id.* at 9. Allstate argues that this approach, without any citation to actual industry standards, is unhelpful because it would usurp the province of the jury "by telling it what result should be reached." *Id.*

Allstate also argues that Mr. Rosenberg's opinions that Allstate violated several sections of the UCSPA, codified at Colo. Rev. Stat. § 10-3-1104(1)(h), similarly should

be stricken because (1) it is improper for an expert to determine who violated or complied with the law; and (2) Mr. Rosenberg's opinion omits the statutory requirement that a violation of the UCSPA must be *willful*. *Id.* at 10.

Overall, Allstate complains that Mr. Rosenberg's report is an "impermissible attempt" at "surrogate advocacy," where his expert report is really nothing more than a "surrogate" brief, duplicating and reinforcing arguments that should be, at most, arguments of counsel. Per Allstate, Mr. Rosenberg's list of opinions are simple conclusions, without any explanation of the methodology or data Mr. Rosenberg relied upon in reaching them. Allstate argues that the "Opinions" section of Mr. Rosenberg's report is nothing more than arguments and a presentation of a theory of the case—which is the role of the attorney, not the expert. *Id.* at 14.

In the Supplemental Brief in Support of its Motion to Exclude, filed after taking Mr. Rosenberg's deposition, Allstate also argues that, because Mr. Rosenberg admitted in deposition that a number of the enumerated practices had no effect on the outcome of the claim, that those criticisms are irrelevant and should not be admitted for that reason. *See* Dkt. #56 at 3–4.

In seeking to exclude Mr. Rosenberg's opinions, Allstate relies in large part on the case of *Anderson v. Am. Nat'l Prop. and Cas. Co.,* Civ. No. 17-cv-03016-KMT, 2020 WL 406077 (D. Colo. Jan. 23. 2020). In *Anderson,* Judge Kathleen M. Tafoya was deciding a motion for summary judgment in an insurance bad faith case. Mr. Rosenberg had been retained by the plaintiff in that case too and offered a similar "laundry" list of twenty-eight enumerated opinions, all purportedly in support of the conclusion that the defendant insurer had failed to meet pertinent industry standards and had acted without

9

a reasonable basis. Allstate in this case repeats many of the criticisms that Judge Tafoya made in *Anderson* with respect to Mr. Rosenberg's expert opinion—that the opinions were conclusory and not undergirded with citation to record evidence (2020 WL 606077, at *9); that a number of the opinions emphasized what Mr. Rosenberg might have thought would be "preferable or "ideal," but none of which were industry standards or norms with respect to the investigation of a claim (*id.* at *10); and that a number of Mr. Rosenberg's enumerated opinions were "irrelevant" given that Mr. Rosenberg himself admitted that the plaintiff was unaffected and unharmed by the insurer's alleged failures (*id.* at 11). While Judge Tafoya was not directly deciding the admissibility of Mr. Rosenberg's expert opinion, she necessarily found that the opinion was inadmissible to show non-conformance with industry standards when, in granting summary judgment, she found no admissible evidence brought forth as part of the summary judgment record upon which a reasonable juror could rely to find that the insurer lacked a reasonable basis in support of its valuation of the insurance claim. *Id.* at *12. Ultimately, Judge Tafoya granted summary judgment on the *Anderson* plaintiff's statutory and common law bad faith claims, while allowing the breach of contract claim to go forward. *Id.* at 15.

**Analysis**

As an initial matter, I agree with Judge Marcia S. Krieger's statement regarding the lack of utility in attacking, in the context of a Rule 702 challenge, an expert's report on a line-by-line basis:

> [T]he Court pauses to observe that a line-by-line exegesis of the opposing expert's report is not a particularly effective method for bringing a Rule 702 challenge. Most expert reports are simply disclosure tools, not the script by which an expert will testify at trial. Not every statement made in an expert's

report will be uttered at trial, and frequently they contain offhand remarks, asides, explanations of methodology, facts that the expert has derived from other sources or simply assumed, and even arguments, little of which may actually be offered for admission at trial.

*Clifton v. State Farm Mut. Auto. Ins. Co.*, 18-cv-01231-MSK-STV, 2021 WL 1100403, at *2, (D. Colo. March 23, 2201). Judge Krieger notes that it is essential for a party challenging a potential expert's testimony under Rule 702 "to vigorously sift an expert's report to separate the wheat—the expert's actual opinions—from the remaining chaff." *Id.* Judge Krieger also wisely counsels that "objections that do not invoke the relatively narrow grounds of Rule 702 invariably result in denial of a motion with leave to raise non-Rule 702 objections at an appropriate time before or during trial." *Id.*

As to the specifics of Mr. Rosenberg's opinions and the underlying basis for those opinions, I find that for purposes of Rule 702 admissibility, Mr. Rosenberg has sufficiently articulated the factual bases for his opinions. To the extent that Allstate is arguing that Mr. Rosenberg's opinions are unreliable because he "relies on facts that do not exist," or "cherry-picks certain facts to the exclusion of others," I believe that there is sufficient room for argument about the facts in this case that the jury will be able to determine whether certain alleged events on which the expert's opinion is based occurred or not. The alleged factual errors are not so egregious as to preclude Mr. Rosenberg from testifying. At trial, Allstate will be able to cross-examine Mr. Rosenberg with respect to the facts forming the bases for his opinions, and the jury can decide whether the opinions are based on facts that have been proved.

For example, there is apparently a dispute about whether Allstate asked more than once for medical authorizations from the Plaintiff. Plaintiff's position is that there is no evidence that Plaintiff received a letter requesting medical authorization dated

11

February 19, 2019. As long as the facts are disputed, an expert is entitled to rely on the version of the facts that Plaintiff believes it can prove. Allstate also says that Mr. Rosenberg relies on the fact that Allstate closed a P.O. Box, without advising Plaintiff's counsel, so a demand sent to Allstate on June 3, 2019 was never received or responded to. Allstate maintains there is "no evidence in the record supporting that factual conclusion." Plaintiff, for his part, points to a letter dated July 2, 2019 stating Allstate closed (without notice) the P.O. Box where Plaintiff's demand had been sent. This issue is obviously disputed and the jury can decide what happened.

On the issue of whether Allstate disclosed its Mitchell Decision Point or Colossus reports in this litigation, Mr. Rosenberg's report reflects his originally mistaken belief that Allstate never disclosed those reports. At his deposition, Mr. Rosenberg recognized his error on this point. Allstate will be free to cross-examine on this issue and argue to the jury that Mr. Rosenberg's opinions should be discounted because of alleged factual mistakes. As Chief Judge Brimmer has noted, "Although the accuracy of the facts and assumptions underlying an expert opinion may impact the reliability of that opinion . . . the accuracy of the facts themselves is an issue more appropriately reserved for trial." *TBL Collectibles*, 285 F. Supp. 3d at 1187.

I come to the same conclusion regarding the criticism of Mr. Rosenberg's report that many of the opinions about particular practices are "irrelevant" because a change in the practice would not have had an effect on the outcome of the claim. *See* Dkt. #56 at 3–4 (arguing that Mr. Rosenberg admitted that certain practices, such as failing to accept medical bills at face value, or reducing medical bills without consulting with a physician, or providing the adjuster with insufficient authority and failing to supervise

him, are "irrelevant" because they had no effect on the outcome of the claim). Allstate argues that if any opinion can be removed and "nothing changes" then the opinion is not relevant or helpful.

I disagree. The fact that Mr. Rosenberg has identified so many arguably dubious practices by Allstate that the elimination of any one of those practices would not have changed the outcome of the claim does not mean that the opinion related to each disputed practice is irrelevant. The jury may find that some of the practices identified by Mr. Rosenberg did not occur, but others did. The jury similarly may find that enough of the practices did occur to return a finding that Allstate, as a whole, acted in bad faith.

As to the criticism that Mr. Rosenberg failed to identify specific industry standards, I find that Mr. Rosenberg's report does identify certain industry standards on which Mr. Rosenberg's ultimate opinion of bad faith is based, including standards developed through case law and statute. *See* Dkt. #57-2 at 26-30 (industry-wide standards acknowledged by Allstate in deposition); 30-31 (industry standards as reflected in Allstate's Casualty Claim Handling Manual).

Mr. Rosenberg's general opinion is the following:

> [That the ultimate determination of claim value] should have occurred following and as part of a reasonable investigation into the salient facts, which should have included, at minimum, a thoughtful and unbiased review of the medical records and the opinions of Mr. Tucker's treating providers (e.g., Dr. Trainor, Dr. Bainbridge and Dr. Miller) and specially-retained experts (e.g., Dr. Leach and Mark Guilford), consideration of liability aggravators (e.g., high speed collision causing significant property damage), some analysis of the intrinsic biases and sympathies at issue in the particular case (healthy middle-aged man with no significant pre-existing injuries who suffered a permanent occipital nerve injury) and how they might drive the size of a jury's award should the parties not be able to resolve the claims amicably without litigation. From a review of the record in this case, it appears devoid of evidence suggesting that Allstate did any of these things as part of its investigation.

13

Dkt. #57-2 at 36. Mr. Rosenberg's list of 23 complaints about Allstate's conduct, rather than being viewed as separate opinions, instead should be viewed as the foundation for his overarching opinion that Allstate, *overall*, failed to adequately and fairly investigate the claim. Allstate's effort to categorize each of these 23 enumerated complaints as a separate opinion, each one requiring its own supporting evidence of an industry standard, is misplaced. As Mr. Rosenberg explained in his deposition when pressed about whether each of these actions by Allstate was or was not consistent with any particular industry standard,

> I can't say it's a common practice or uncommon practice. Whether it is, again, these bullet points or these enumerated sections that I've got in here, these are designed to serve as examples of things that I'm seeing when you look at them all in their totality as you're supposed to to [sic] assess, you know - - try to assess objectively the – the insurance company's handling of a claim, you know, these are examples that collectively looking at it, it – that when you add them all up, you know, it supports the ultimate opinion that I have, which is that I didn't find the claim handling here to comport with industry standards.

Dkt. #56-2 at 12.

According to Mr. Rosenberg, whether a particular investigative technique should or should not be used in any particular claim needs to be looked at on "a case-by-case type of basis." *Id* at 11. For example, in some cases, depending on the facts, it might be appropriate for an adjuster to simply look at the medical records themselves; in other cases, "it may be absolutely necessary to go and try to clear something up with a treating provider." *Id.*

I find that Mr. Rosenberg's articulation of an overarching standard, and specific examples of how Allstate allegedly violated that standard, is consistent with the type of expert testimony that has been admitted in this type of case. *See, e.g.*, *Peiffer v. State*

14

*Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996) (affirming admittance of insurance expert's testimony in bad faith case where expert opined that insurer had violated several provisions of the UCSPA when it denied the plaintiff's claim, and testimony related to the facts of the insurer's conduct in light of the provisions of the UCSPA and applicable insurance industry standards).

As to Allstate's reliance on Judge Tafoya's decision in *Anderson* as a basis for excluding Mr. Rosenberg's expert opinion in this case, I find the two circumstances distinguishable. As noted, Judge Tafoya was making a summary judgment determination, while I am deciding the question of the threshold admissibility of an expert opinion. I also find that in this case, unlike in *Anderson*, Mr. Rosenberg has sufficiently linked his opinions to certain industry standards.

**Conclusion**

For the foregoing reasons, I find that portions of Mr. Rosenberg's proposed expert opinion will help the jury to understand the evidence and determine facts in issue; that the proposed testimony is based on sufficient facts; and that the proposed testimony is the product of reliable principles and methods reliably applied. *See* Fed. R. Evid. 702. Allstate's Motion to Exclude will be denied.

This said, at trial, I will be policing carefully all expert testimony to ensure that the expert, in presenting opinions to the jury, is not crossing the sometimes-blurry line between referring to statutes and regulations as illustrative of what constitutes "reasonable conduct," and the expression of the expert's beliefs as to the legal rights and obligations of the parties. The latter expression of the expert's beliefs is not admissible because such testimony usurps the Court's function. *TBL Collectibles*, 285

F.Supp.3d at 1184; *see also King v. Allstate Ins. Co.*, 11-cv-00103-WJM-BNB, 2013 WL 3943607, at *5 (D. Colo. July 31, 2013) ("However, the Court sees a difference between, on the one hand, [the expert] testifying about the holding in a particular case and applying the rule of that case to the facts at issue here and, on the other hand, [the expert] testifying about his understanding of the law and how it impacts his understanding of the standards that govern the insurance industry. The Court will permit testimony which resembles the latter; the former is impermissible."); *Peiffer*, 940 P.2d at 971 (while "an expert witness [in bad faith case] should not dictate the law that the jury should apply, an expert witness is permitted, in the trial court's discretion, to refer to the facts of the case in legal terms"). Thus, this ruling is without prejudice to the right of counsel for Allstate to reassert objections at trial if the testimony being elicited appears to be crossing this line.

I am also inclined, prior to the presentation of any such expert testimony, to give the jury a limiting instruction, similar to that given in the *King v. Allstate* case. In that case, Judge William J. Martinez said he would deliver an instruction that will "make clear that the Court will instruct the jury on the law and, to the extent that [the expert's] testimony differs from the Court's instructions, the jury must credit the Court's instructions over such testimony." 2013 WL 3943607, at *5. The instruction also "inform[ed] the jurors that they may give [the expert's] testimony whatever weight they deem appropriate, and that they are the ultimate finders of fact in this case." *Id.* The parties should work together to attempt to stipulate to a proposed limiting instruction and should include such stipulated instruction in their set of instructions. To the extent that

the parties are not able to reach a stipulation, the Court will accept competing proposed limiting instructions.

Dated:     July 6, 2021
              Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge